UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 12-10264-RGS

UNITED STATES OF AMERICA

v.

GADIEL ROMERO

ORDER ON
PETITIONER'S MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE

September 22, 2021

STEARNS, D.J.

Petitioner Gadiel Romero, represented by new counsel, brought this petition on August 30, 2020, to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] (Romero pled guilty to one-count of

---

[1] Section 2255 is not a substitute for direct appeal, but rather provides post-conviction relief in four limited instances: "if the petitioner's sentence was (1) imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). "The catch-all fourth category includes only assignments of error that reveal 'fundamental defect[s]' which, if uncorrected, will 'result[ ] in a complete miscarriage of justice,' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'" *Id.*, quoting *Hill v. United States*, 368 U.S. 424, 428 (1962). In other words, a cognizable Section 2255 claim that does not raise

conspiracy to commit a kidnapping for ransom in violation of 18 U.S.C. § 1201(c)). The sole basis for the motion is alleged ineffective assistance of counsel. Romero alleges that his attorney had assured him of a realistic prospect of a joint recommendation of a sentence of 120 months in exchange for his guilty plea.[2] Romero professes to being taken by surprise when at sentencing the government recommended a sentence of 312 months, and then being further surprised when the court chose to impose a sentence of 276 months. Romero further states that "[t]he Court did not advise [him] that its guidelines calculation might differ from the calculation urged by either party, or that the Court might calculate an even higher guideline

---

constitutional or jurisdictional issues must reveal "exceptional circumstances" that compel redress. *Id.* The petitioner bears the burden of demonstrating an entitlement to relief. *Mack v. United States*, 635 F.2d 20, 26-27 (1st Cir. 1980). Almost without exception, the issues Romero now raises were resolved against him by the First Circuit Court of Appeals, including the issue of the admissibility of a surreptitious (and incriminating) recording of Mr. Romero made by a jailhouse informant. *See United States v. Romero*, 906 F.3d 196 (1st Cir. 2018).

[2] An inaccurate prediction of a petitioner's sentence will, by itself, never rise to the level of ineffective assistance. *United States v. LaBonte*, 70 F.3d 1396, 1413 (1st Cir. 1995), *rev'd on other grounds*, 520 U.S. 751 (1997). *See also Moreno-Espada v. United States*, 666 F.3d 60, 65-66 (1st Cir. 2012) (counsel's failure to correctly calculate sentencing range prior to the entry of a guilty plea is not ineffective assistance where petitioner could not show prejudice - that is, that petitioner would have opted to go to trial but for counsel's mistake. Moreover, petitioner was aware that judge was not bound by the sentencing recommendation at the time he entered the plea.).

range." Def.'s Mem. at 4 (Dkt # 1199).  As neither of these latter two pivotal allegations is true, the court agrees with the government that Romero's petition is a ripe candidate for a summary disposition, particularly where they are being advanced before the judge who presided at the plea and sentencing hearings.  *See United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

The most appropriate response to petitioner's allegations is to let the transcript of the plea hearing speak for itself.

ISSUE 1. **"The promised joint recommendation never materialized."**

> THE COURT addressing AUSA Pohl: "[W]hat are the maximum statutory penalties to the offense?
>
> MR. POHL: Your Honor, the maximum potential penalty in this case is life in prison, a fine of up to $250,000, a period of supervised release of up to five years and a $100 mandatory special assessment.
>
> THE COURT: So the punishment for the conspiracy is defined by the target crime?
>
> MR. LEVITT: Correct, your Honor, yes.
>
> THE COURT: All right. Do you understand that these are the maximum statutory penalties for the offense?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Mr. Sullivan, have you discussed the Sentencing Guidelines with your client or with the government or both?

> MR. SULLIVAN: Yes, we have, your Honor.
>
> THE COURT: And do you have a rough idea of how the guidelines might affect the case?
>
> MR. SULLIVAN: Your Honor, we do, yes.
>
> THE COURT: Can you just give me a general estimate?
>
> MR. SULLIVAN: I think the guidelines before plea with the acceptance of responsibility, we're looking at between 11 and 15 years.
>
> THE COURT: Does that sound correct to you, Mr. Pohl?
>
> MR. POHL: I think our view, I know from counsel, many conversations with counsel that the guidelines and the starting point of the guidelines will be something that will be discussed in great detail at the sentencing hearing. I think our view of the guidelines is that they will come out higher than that for Mr. Romero, and we have sort of 292- to 365-month plea numbers, and that's I think where the guidelines in our view come out, somewhat higher, though Mr. Sullivan has in effect indicated that's something that will be discussed in detail at the sentencing hearing.

Plea Tr. at 10-11 (Dkt # 800).[3]

ISSUE 2. **"The Court did not advise Mr. Romero that its guidelines calculation might differ from the calculation urged by either party"**

> THE COURT: Mr. Romero, not to make this too much of a mystery, but we talked about statutory penalties. Those obviously are set very high by Congress. That's the ceiling that is put on the offense of life imprisonment. More realistically, a

---

[3] A further observation: Romero, when asked directly at the plea colloquy whether any undisclosed promises had been made to induce his plea, answered: "No, sir." Plea Tr. at 19-20 (Dkt # 800).

4

sentence is going to be determined by what is called a guidelines calculation.

The guidelines were put into place some 30 years ago to attempt to achieve more uniformity in sentencing practices among federal Judges, so the guidelines in effect reduced some of the historic discretion the Judges had in sentencing matters, and it did it by basically ranking federal sentences in terms of perceived seriousness and assigned a number to that perceived seriousness called an offense level.

The offense level in turn is keyed to a range of minimum and a maximum number of months, and Judges were expected when the guidelines were promulgated to generally sentence within that range.

There are adjustments in the range. If a person has a prior criminal history, there's an adjustment upward in the way the range applies. If a person accepts responsibility, as you're doing, there's downward adjustment in recognition of that.

At the end of the day, a Court, that is, a Judge, is required to make the guideline calculation, but what I should add is that the result is not mandatory. There was a period, perhaps 10 years or so ago, that the guidelines had begun to assume somewhat of a mandatory character, particularly in the eyes of Courts of Appeals that were reviewing sentences and guideline applications. The Supreme Court intervened and said that's not really the purpose of sentencing, the purpose of sentencing is to ensure that in a given case, the sentence imposed serves both the interests of society in deterring and punishing crime but also the interest that a defendant has in rehabilitation, and that a Judge's job is to weigh those two factors and to fashion a sentence that does justice under the circumstances of the case.

So we talk about the guidelines, and we talk about ranges. This is not a mechanical exercise, this is something that gets worked out over the course of preparing a pre-sentence report, given discussions between your counsel and the government, but then ultimately if there are issues, and apparently there will be here as

to which aspects of the guidelines should or should not apply or the extent to which I should exercise discretion in fashioning the sentence upwards or downwards, depending on whether it's the government or your lawyer speaking.

Ultimately, I have to see that at least to my mind, as best as I can accomplish it, that justice is being done in the case, so there will be a pre-sentence report prepared.  It will be shared with you, obviously, with me and with the government, and where there are disagreements, we have a hearing, and that's where we have an opportunity to work out finally what satisfies me as a fair and just sentence, and, of course, you have an opportunity to participate in that process and to speak at that hearing as well.

So, do you have any questions about the sentencing process going forward?

THE DEFENDANT:  Not at this moment, I don't.[4]

## ORDER

For the foregoing reasons, Romero's motion to vacate, set aside, or correct his sentence is DENIED.[5]  Defendant's motion for an evidentiary hearing is denied as the court sees no purpose to be served by eliciting testimony from either of Romero's (successive) trial attorneys.

---

[4] It is worth noting that at the "end of the day" the court imposed a sentence well below the government's recommendation of 312 months and substantially below the PSR guidelines calculation of 360 months to life.

[5] Petitioner is advised that any request for the issuance of a Certificate of Appealability pursuant to 28 U.S.C. § 2253 of the court's Order dismissing his petition is also DENIED, the court seeing no meritorious or substantial basis for an appeal.  The Clerk will close the matter and notify the petitioner accordingly.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE